## Limekiln Golf Course, Inc. v. Zoning Board of Adjustment of Horsham Township.

Argued February 10, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and ROGERS.

*Edward Fackenthal,* with him *Henderson, Wetherill, O'Hey & Horsey,* for appellant.

*Paul D. North,* for appellee.

OPINION BY JUDGE ROGERS, April 12, 1971:

This is an appeal from an order of the Court of Common Pleas of Montgomery County dismissing an appeal from and affirming a decision of a Zoning Hearing Board.

As our judgment is based upon the somewhat unusual history of this case, it is necessary to make a rather detailed recital of facts.

The appellant, Limekiln Golf Course, Inc. (Limekiln) entered into a written agreement with G. Marcus Edwards and Henrietta Edwards, his wife, dated December 30, 1965, by which relevantly: 1. The Edwards granted Limekiln an option exercisable on or before December 30, 1970, to purchase the Edwards' tract of land in Horsham Township, Montgomery County, containing approximately 22 1/2 acres of land improved with a dwelling house and outbuildings for the pur-

chase price of $47,500; 2. Limekiln paid the Edwards $5,000 on the execution of the agreement and agreed to pay them $3,000 within 60 days after execution and $200 each month commencing February 1, 1966; and 3. The Edwards granted Limekiln during the five-year term of the Agreement "the unqualified and exclusive right to use any portion or portions of the premises [except the dwelling house and a curtilege of approximately two acres] for purposes of landscaping or otherwise improving the same for golf course or related purposes."

On December 30, 1966, and thereafter, Limekiln owned and operated a golf course adjoining the Edwards tract.

In November 1968, Limekiln applied to the Zoning Board of Adjustment of Horsham Township for a special exception to use portions of the Edwards tract for a golf driving range. The tract lay within an AA Residential Zoning District as to which the following provision of the Township Zoning Ordinance applied: "Section 501, Permitted Uses in AA, A and B Residential Districts: 3. Any of the following purposes when authorized as a special exception . . . d. Golf course, golf house, miniature golf course, driving range and archery range."

On December 9, 1968, the Zoning Board conducted a public hearing upon Limekiln's application, at which the applicant's president, a Curtis T. Simmons, submitted a plan of the proposed driving range and testified in some detail as the kinds of facilities to be installed. Public participation at this hearing consisted principally of general objections to the proposal on the part of the owner of an adjacent property. This gentleman's concern was that the driving range might adversely affect the value of his property which he had acquired as a long range investment. A continued hearing was ordered by the Board on the ground that

the proposal was "somewhat indefinite" and to allow "a little more thought on your [the appellant's] part perhaps as far as location and safety measures and details . . . and to give us an opportunity to study this thing a little more thoroughly." The continued hearing was conducted on January 13, 1969. On this occasion, there appeared a sizable group of protesters lead by counsel. Mr. Simmons again presented Limekiln's plan for a golf driving range modified to meet the objections of the adjoining property owner.

At the conclusion of testimony, the Chairman of the Board raised the question of whether Limekiln had standing to pursue its application, based upon his, the Chairman's, investigation of the law in "Ladner's Book." The Chairman's expressions of doubt concerning applicant's standing were buttressed by the Board's counsel, who advised the Board that Limekiln had no standing[1] because it was not an equitable owner. Limekiln's counsel thereupon suggested that his client might exercise its option while the matter was pending. The Board's counsel objected to this procedure. There then ensued discussion off the record, following which Limekiln's representative withdrew its application. The Chairman of the Board announced: "The Zoning Board is in the position that they do not believe the applicant has equitable ownership in the property, therefore, the application could not properly be acted upon by the Board. We have suggested to the owner, and they

---

[1] This advice was erroneous. Limekiln had the right to use the land for five years. As such, it clearly had standing to make this application. *Richman v. Zoning Board of Adjustment,* 391 Pa. 254, 137 A. 2d 280 (1958) ; *Poster Advertising Company, Inc. v. Zoning Board of Adjustment,* 408 Pa. 248, 182 A. 2d 521 (1962). The Pennsylvania Municipalities Planning Code, 1969, July 31, P. L. , No. 247, Sections 107 (12), 914, 53 P.S. 10107 (12), 10914, includes optionees as landowners and authorizes applications to be made by landowners.

have agreed, that they would immediately start action to exercise their option and purchase the property in question. Once they have done this they then become an equitable owner and are entitled to appeal again, to apply again to this Board for a hearing. We have stipulated . . . that all the testimony that has been taken in this case up to this point will be included in the future applications so that we don't have to enter all of that information over again. However, any additional testimony, or new information that would be presented at that time is acceptable to the Board. We will perfunctorily render a decision next month at our regular meeting, but all parties are aware what that decision will be so far as this application is concerned. We are in a position to deny it as it stands at this moment."

On the following evening, January 14, 1969, the supervisors of Horsham Township met in an executive session with the township solicitor, who, as counsel for the Zoning Hearing Board, had attended that Board's hearing of the night before. The supervisors were informed that Limekiln's application for a special exception had been withdrawn; thereupon, according to minutes of this meeting: "The Board then discussed a required change in the Zoning Ordinance pertaining to recreation facilities in residential areas. By unanimous vote, the solicitor was instructed to advertise the change for consideration by the Board at public meeting on February 4, 1969." No notice was given of this meeting and Limekiln knew nothing of it.

The township's solicitor prepared an ordinance eliminating miniature golf courses, driving ranges and archery ranges as uses permitted by special exception in the AA, A and B residential districts of the township. A notice of the proposed amendment fixing February 4, 1969, at 8:00 p.m. as a hearing date was published in a newspaper of general circulation in the

township on January 20, January 23, and January 27, 1969.

In pursuance of the discussion and understanding of the Zoning Hearing Board meeting of January 13, 1969, Limekiln exercised its option to purchase the Edwards property on January 27, 1969.

On February 4, 1969, at 5:00 p.m., Mr. Simmons of Limekiln, having learned of the proposed zoning amendment, delivered an application for special exception to a person "on the desk" at the township building. On the same evening, he returned to the township building and told a township employe named Norton of the earlier delivery of the application and advised Norton that the application had not been "notarized." Norton told Simmons that the application was acceptable though not "notarized." The ordinance amending the zoning regulations was adopted by the supervisors at its meeting held at 8:00 p.m., February 4, 1969. Some days after February 4, 1969, Mr. Simmons received his application for special exception in the mail with a notice requesting that it be "notarized." This was attended to and it was refiled on February 11, 1969.

The Zoning Hearing Board met to hear the application for special exception on March 10, 1969. The Board was again represented by the township solicitor. Limekiln was informed by the Board Chairman that the Board considered the amendatory ordinance adopted February 4, 1969 applicable "to this application since it was not received until after the effective date of that ordinance." Counsel for Limekiln contended, first, that the amendatory ordinance was special legislation and therefore should not apply to its application before the Board, and second, that under the stipulation entered into at the earlier hearing it was entitled to a hearing and decision on the record previously made without reference to the amendatory ordinance and regardless of its withdrawal of the earlier application. Limekiln

offered evidence concerning the circumstances surrounding the adoption of the amendatory ordinance tending to show that this was either special legislation or that the amendment had not been adopted in accordance with statutory requirements. Much of this was excluded either as irrelevant or as not a proper subject of inquiry in the case. The notes of testimony of the two public hearings were offered but excluded as irrelevant in the light of the amendment. Counsel for Limekiln offered evidence as to the off-the-record discussions at the earlier hearings preceding its withdrawal of its earlier application. This was excluded. In short, the Board ruled that the amendatory ordinance not only precluded Limekiln's requested relief but that it somehow prevented the taking of evidence.

The Zoning Hearing Board's Opinion and Order is dated April 14, 1969. It was mailed to counsel for Limekiln on April 28, and received on April 29, 1969. The Board denied the application for a special exception for a driving range and in its Opinion and Order made the following so-called findings of fact: "8. [On February 4, 1969] the applicant lodged with an unknown person at the township building its application for a driving range. Said application was not properly executed by the applicant and upon accomplishment of this, the application was properly filed on February 11, 1969. . . . 10. At the conclusion of the hearing of the applicant's previous application of January 13, 1969, the applicant had not established requisite legal status to support its application. 11. The applicant voluntarily withdrew its application on January 13, 1969, leaving the record clear. 12. On January 14, 1969, there was no pending application before the Zoning Hearing Board. 13. The Board of Supervisors lawfully authorized the adoption of the change of zoning ordinance. 14. At the public hearing on February 4, 1969, when the zoning ordinance was amended, there

was no known application then pending before the Zoning Hearing Board involving the portion of the ordinance amended. 15. At the time the applicant filed its properly executed application, the zoning ordinance had been amended eliminating driving ranges from the purview of that section, among other things."

On appeal, the Common Pleas Court filed an order without opinion dismissing the appeal and affirming the Zoning Hearing Board "on the opinion of the Board."

The appellant urges us to reverse the lower court's order for two reasons: first, because the amendatory ordinance was adopted for the special purpose of thwarting appellant's use of its land for a purpose permitted by special exception and is, therefore, invalid as to it; second, because the Zoning Hearing Board failed to comply with Subsections 9 and 10 of Section 908 of the Pennsylvania Municipalities Planning Code[2] compelling a statutorily mandated decision in its favor on the merits.

In *Shapiro v. Zoning Board of Adjustment*, 377 Pa. 621, 105 A. 2d 299 (1954), the landowner sought, and after litigation before a zoning board and the Court of Common Pleas, obtained a permit to develop and use his property for an amusement park. While the matter was on appeal to the Common Pleas Court, there was introduced in City Council an amendment to the Zoning Ordinance designed to prevent amusement parks in the zoning district in which the owner's land was located. The landowner's permits were revoked after the amendatory ordinance was adopted. The recital to a resolution announcing Council's intention to adopt the amendatory ordinance made specific reference to

---

[2] Act of 1968, July 31, P. L.    , No. 247, Section 908 (9) and (10), 53 P.S. 10908 (9) and (10), referred to more fully hereinafter.

the possibility of the establishment of an amusement park at the location of the owner's property. The Supreme Court affirmed orders of the Common Pleas Court directing the permits to issue and approved the lower court's conclusion that the ordinance "was special legislation, unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that it was aimed at this particular piece of property."

In *Yocum v. Powers*, 398 Pa. 223, 157 A. 2d 368 (1960), a congregation purchased land on which to build a church and applied for and received a zoning use permit. At the instance of protesting neighbors, City Council amended its zoning regulations so as to remove churches as a permitted use in the zoning district. The Supreme Court approved the lower court's conclusion that the amendatory ordinance was special legislation and as such inapplicable and of no effect.

*Commercial Properties, Inc. v. Peternel*, 418 Pa. 304, 211 A. 2d 514 (1965), was a mandamus action brought by a landowner to obtain grading and building permits for the construction of a shopping center. The tract involved was classified as commercial and shopping centers were a permitted use. After the landowner applied for, but before he received a building permit, the municipality classified the tract residential in which district shopping centers were not permitted. The Supreme Court approved the lower court's conclusion that the zoning change was special legislation, the sole purpose of which was to prevent the landowner from constructing its shopping center and was, therefore, invalid.

In *Gallagher v. Building Inspector, City of Erie*, 432 Pa. 301, 247 A. 2d 572 (1968), after the property owner had received permits for the construction of townhouses and after protests by neighbors, an area which included the applicant's land was reclassified so as to prohibit townhouses. The Supreme Court held

that fairness demanded that the premits should stand, citing *Shapiro, supra.*

We believe that these cases are determinative of the matter before us. Here, the Horsham Township supervisors met in private session the day following the Zoning Board hearing at which, at the suggestion of the Board, Limekiln withdrew its application. Being advised that Limekiln's application had been withdrawn, they directed preparation and public advertisement of an amendment to its zoning regulations having no conceivable purpose except to prohibit the use Limekiln proposed. At the March 10, 1969 hearing before the Zoning Board, the township secretary testified that the Township Planning Commission had had under consideration for two years a complete revision of the Township Zoning Ordinance and that this revision was to be ready for consideration within a few months. The deletion from the Zoning Ordinance of driving ranges, miniature golf courses and archery ranges as permitted uses, unless exceptionally motivated, was hardly an action which could not await a revision of the revised Zoning Code so long in progress and so soon to be consummated. Moreover, the date fixed for public hearing on the amendment just 22 days after the executive session barely allowed for timely notice[3] and precluded compliance with the requirement that the amendment be submitted to the Township Planning Commission for recommendation at least 30 days prior to hearing.[4] That this ordinance was tailored for Limekiln is shown further by the rejection for lack of a verification of the application left with the township prior to supervisors'

---

[3] The notice was first published January 20. The Pennsylvania Municipalities Planning Code, *supra*, Section 107 (18), 53 P.S. 10107 (18) requires that the notice be published not less than 14 days in advance of a public hearing.

[4] Pennsylvania Municipalities Planning Code, *supra*, Section 609, 53 P.S. 10609.

meeting on February 4, 1969. The insistence on compliance with this detail as to an application practically identical with one previously filed on which exhaustive hearings had been held, reveals not only the township's special purpose to prevent this use, but also the urgency with which that end was sought.[5]

. It does not follow from our conclusion that the amendatory ordinance was here ineffective,[6] that we may order the special exception to issue. That act must be performed by the Zoning Hearing Board and be in the form and of the substance prescribed by the Pennsylvania Municipalities Planning Code, supra, Sections 908 (9) and 913, 53 P.S. 10908 (9) and 10913. We might remark, however, that a careful reading of the entire record made before the Board reveals nothing which could be the proper basis for an outright denial of this application.

We might end this opinion here. However, other issues have been raised or are implicit herein which it seems useful to discuss and hopefully illuminate.

I. It has been noted throughout our discussion of the facts that the same person acted as legal counsel for the Zoning Hearing Board and the township. This practice cannot be approved where the municipality has or may have a position adverse to a party to the proceedings. Due process includes the right to an impartial hearing before the Zoning Board. The dependence by a zoning board upon legal advice furnished by counsel of a municipality interested in the

---

[5] The Horsham Township Zoning Ordinance, although quite specific as to the essentials of an application by permit, does not require verification thereof.

[6] In Shapiro v. Zoning Board of Adjustment, supra, it was noted that neither the validity nor the effect of the ordinance prospectively was involved. This conclusion applies here. By the same token, no subsequently adopted valid regulation may affect this pending application.

litigation is an unnecessary and unwarranted occasion for partiality.

II. The Zoning Hearing Board excluded evidence offered for the purpose of proving the amendatory ordinance to be special legislation on the ground that it was powerless to set the ordinance aside and that therefore such evidence was irrelevant. This ruling is plainly contrary to the Pennsylvania Municipalities Planning Code, which provides by Section 910, 53 P.S. 10910 in pertinent part: ". . . the board shall have no power to pass upon the validity of any provision of an ordinance or map adopted by the governing body. Recognizing that challenges to the validity of an ordinance or map may present issues of fact and of interpretation . . . the board may hear all challenges wherein the validity of the ordinance or map presents any issues of fact or of interpretation . . . At the conclusion of the hearing, the board shall decide all contested questions of interpretation and shall make findings on all relevant issues of fact . . . ."

III. As hereinbefore stated, the appellant raises the issue as to what consequence should flow from the Zoning Board's failure to deliver or mail a copy of its decision not later than the day following its date. Its contention is that such failure should require that "the decision shall be deemed to have been rendered in favor of the applicant." The pertinent provisions of the Code[7] are at Sections 908(9) and 908(10): "(9) The board . . . shall render a written decision . . . within forty-five days . . . Where the board has power to render a decision and the board . . . fails to render the same within the period required by this clause, the decision shall be deemed to have been rendered in favor of the applicant. (10) A copy of the final decision or, where no decision is called for, of the findings shall be

---

[7] 53 P.S. 10908 (9) and (10).

delivered to the applicant personally or mailed to him not later than the day following its date . . . ."

. This Board's decision was mailed five days after the date appearing thereon. The Board denied the special exception on the ground that the amendatory ordinance enacted February 4, 1969 preceded the appellant's second application which it found was not properly filed until February 11, 1969. The appellant contended, correctly as it developed, that the amendatory ordinance was invalid as to it. This question was one on which the Board had no power to render a decision under Section 910[8] of the Code, hence the mandate of decision in favor of the applicant would not become effective even in the event of a plainly tardy filing. Nevertheless, we have no hesitancy in concluding that the delivery or mailing requirement of clause (10) is directory rather than mandatory. An instructive discussion of the rules and aids to construction relative to this subject is contained in *Commonwealth ex rel. Kelley v. Pommer*, 330 Pa. 421, 199 A. 485 (1938) ; however, a time-honored form of the rule to be applied is "that whether a statute is mandatory or not depends on whether the thing directed to be done is of the essence of the thing required." See *Deibert v. Rhodes*, 291 Pa. 550, 140 A. 515 (1928). The essence of clauses (9) and (10) of Section 908 is the filing of the report within the time fixed in clause (9), not the giving of notice. We are not unmindful that zoning procedures are to be strictly followed; but if the statutory provision in question is simply intended to promote dispatch and if noncompliance does not injure the landowner, the provision is to be construed as directory. See *Appeal of Baldwin*, 153 Pa. Superior Ct. 358, 33 A. 2d 773 (1943). We do not believe that the legislature intended the severe stricture of clause (9) to follow from a fail-

---

[8] 53 P.S. 10910.

ure to observe the letter of clause (10) not only be-
cause the alternative consequence of decision for the
applicant is not included in the latter but also because
a consequence protective of the applicant is otherwise
provided. The appeal period does not commence to run
until issuance of notice of the decision. or report of.
the board.[9]

IV. A dictum in *Mutzig v. Hatboro Board of
Adjustment,* 440 Pa. 455, 269 A. 2d 694 (1970) must
be mentioned. In that case, the Supreme Court was
required to decide which of an application for special
exception and a zoning amendment was first pending.
The Court held, Justice ROBERTS dissenting, that in the
circumstances a public declaration of the municipality's
intention to amend had preceded the application, but
the majority was equally divided as to which of two
events constituted the public declaration.[10]

The dictum in question appears in the opinion writ-
ten by Justice O'BRIEN,[11] and is as follows: "Appellant
next argues that if the Hatboro zoning ordinance is
found to apply to appellant's application, the ordinance
is unconstitutional in its practical prohibition of any
additional service stations within the Borough . . . How-
ever, appellant cannot now raise such issues for the first
time. *If appellant wished to question the validity of
the new ordinance, appellant should have appealed
[sic] for a variance under the new ordinance as well
as for a special exception under the old one. We ex-
plained this procedure in* Nat. Land & I. Company v.

---

[9] Pennsylvania Municipalities Code, *supra,* Section 1004, 53 P.S.
11004.

[10] As we have concluded here that the amendatory ordinance
was invalid as to appellant, we are not faced with this determina-
tion.

[11] It is not mentioned in the opinion of Justice POMEROY, conc-
curred in by Justices JONES and EAGEN, but it is disapproved by
Justice ROBERTS.

Easttown Township Board of Adjustment, 419 Pa. 504, 215 A. 2d 597 (1965)." (Emphasis supplied)

Insofar as this dictum suggests that constitutional attacks on zoning ordinances may be made only by the seeking of a variance, it is entirely novel and a departure from the practice of simply appealing the zoning officer's refusal to grant a building or use permit. See *Appeal of Lord*, 368 Pa. 121, 81 A. 2d 533 (1951) ; *Appeal of Medinger*, 377 Pa. 217, 104 A. 2d 118 (1954) ; *Bilbar Construction Company v. Board of Adjustment*, 393 Pa. 62, 141 A. 2d 851 (1958). Further, the constitutional issue has been raised and decided in proceedings brought to obtain special exceptions. *Jacobi v. Zoning Board of Adjustment*, 413 Pa. 286, 196 A. 2d 742 (1964). In *National Land, supra*, a township contended that a claim of unconstitutionality asserted some months after the filing of an application for a variance was not made within a reasonable time after the denial of the building permit as the statute required. The Supreme Court held that an application for a variance challenges legality and that since the variance was timely sought the specific charge of constitutional illegality might be made later if done prior to the hearing before the Board of Adjustment. Compare *Eller v. Board of Adjustment*, 414 Pa. 1, 198 A. 2d 863 (1964). The *National Land* Court did not hold that the constitutionality of a regulation may not be raised except by application for a variance.

Here the appellant properly raised the issue of the applicability of the amendatory ordinance before the Zoning Hearing Board and the court below in proceedings appropriate under the ordinance as it existed when the action was commenced. It would be wholly unreasonable to require it to commence a new action in order to challenge an ordinance adopted for the purpose of defeating the very cause it was then pursuing.

Order reversed and the record remanded to the court below for further proceedings in accordance with this opinion.

Judge MANDERINO concurs in the result.