373 So.2d 710 (1979)
PROJECT HOME, INC., Appellant,
v.
TOWN OF ASTATULA et al., Appellees.
No. 78-1257.
District Court of Appeal of Florida, Second District.
August 1, 1979.
*711 Leon G. Van Wert, of Van Wert, Heebner & Kennedy, Daytona Beach, for appellant.
Richard W. Hennings, of Ford, Cauthen & Robuck, Tavares, for appellee Town of Astatula.
DANAHY, Judge.
The question presented for our consideration is whether appellee Town of Astatula, a municipality, is estopped from denying appellant Project Home, Inc. permission to place ten mobile homes on its property. We answer in the affirmative and reverse a final judgment entered in favor of the town.
Project Home is a nonprofit Florida corporation formed by a Franciscan priest, Father Finian Reilly, to assist migrant workers to purchase their own mobile homes. In September 1974, a parcel of property in the Town of Astatula was advertised for sale as a group of mobile home lots. The prospective sellers had previously inquired of the Astatula town council whether mobile homes could be placed on the property. The town clerk was authorized by the council to write a letter certifying that the parcel in question "is zoned for mobile homes." The letter was issued, addressed "to whom it may concern." The sellers then sent a hand drawn plat of the property to the clerk and asked if zoning would permit a subdivision of the property into a total of six mobile home lots as shown on the plat. The clerk, at the instruction of the council, replied by letter that "you may sell the size lots shown on [the] proposed plat of survey." The letter again stated that the property "is zoned for mobile homes." At this time Astatula, which is a small municipality, had no official zoning plan in effect.
Thereafter, on September 20, 1974, Project Home entered into a contract to purchase the property contingent on Project Home's obtaining "mobile home park zoning" that would allow ten mobile homes to be placed on the property. Father Reilly then went to the town clerk and asked what he should do to increase the number of lots from six to ten. With the clerk's assistance, he prepared a sketch of the property showing its subdivision into ten lots. Father Reilly understood that the clerk would submit this sketch to the town council for approval. In December 1974, the clerk wrote Father Reilly a letter stating that "concerning the proposed plan of ten lots ... at this time the Town of Astatula has no restrictions against this size lot if the size is not in conflict with the health department or other agencies requirements."
In February 1975, the sellers conveyed the property to Project Home for the purchase price of $20,000. Thereafter Father Reilly approached the town clerk to inquire about building permits for a mobile home project on the property. The clerk told Father Reilly to obtain water and sewer permits from the county health department and, after improvements for water, sewer, and electricity were completed, the town would issue permits as a matter of routine to put mobile homes on the property. The requisite water and sewer permits were obtained from the county, and water, sewer and electrical systems on the property to accommodate ten mobile homes were substantially completed by the middle of April 1975, at a cost of approximately $8,300.
On April 17, 1975, the Town of Astatula adopted an emergency ordinance imposing a 60 day moratorium on all development and building construction within the municipal limits. The moratorium was ultimately extended through the middle of July 1975. *712 On May 12, 1975, when Father Reilly again approached the town clerk to ask for permits for the final electrical hookups and individual permits for ten mobile homes, he was informed for the first time that the moratorium was in effect.
On July 1, 1975, the town council adopted a comprehensive zoning ordinance which placed Project Home's property in a residential holding district requiring a minimum lot size for mobile homes of three acres each. Since Project Home intended to place mobile homes on lots of less than three acres each, its proposed mobile home park of ten lots was not permissible under the zoning ordinance. A maximum of two mobile homes on the Project Home property was permissible under the ordinance's grandfather clause.
In September 1976, the chairman of the town's newly established Planning and Zoning Board told Father Reilly that in order to gain permission for ten mobile homes on its property, Project Home would have to apply formally for rezoning. Father Reilly appeared at a town council meeting in November and asked permission to finalize the project. He was again told to apply formally for rezoning. Project Home then submitted a formal request which was denied by the zoning board. An appeal to the town council was unsuccessful. Thereupon Project Home brought this suit against the town seeking an order compelling the town to issue permits for eight mobile homes on the Project Home property in addition to the permits for two mobile homes to which it was entitled under the zoning ordinance (and which the town had in fact issued). The trial judge ruled that the town was not obliged to issue eight additional permits to Project Home and this appeal followed.
Project Home argues that the classic elements of equitable estoppel apply in this case because Project Home "(1) in good faith (2) upon some act or omission of the government (3) [made] such a substantial change in position or [incurred] such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right [Project Home] acquired." Sakolsky v. City of Coral Gables, 151 So.2d 433 (Fla. 1963); Hollywood Beach Hotel v. City of Hollywood, 329 So.2d 10 (Fla. 1976).
We note that a majority of the cases cited by Project Home to support its argument dealt with developers of large-scale projects who expended great amounts of money in reliance on existing zoning regulations. For the most part those regulations had been enacted at the request of the developers and were rescinded after the developers had incurred substantial obligations. Town of Largo v. Imperial Homes Corp., 309 So.2d 571 (Fla.2d DCA 1975); City of Gainesville v. Bishop, 174 So.2d 100 (Fla.1st DCA 1965); Texas Company v. Town of Miami Springs, 44 So.2d 808 (Fla. 1950); Sakolsky v. City of Coral Gables, supra. These cases uniformly require that for estoppel to apply, the city government must have taken some affirmative action upon which the property owner relied to his detriment.
Cases cited by the town in which the courts refused to apply equitable estoppel reveal a common theme. The property owners in those cases either relied solely on existing zoning without further inquiry or relied on the absence of any zoning at all. Pasco County v. Tampa Development Corp., 364 So.2d 850 (Fla.2d DCA 1978). In one case the owner failed to show financial expenditures and had not yet begun construction. Walker v. Indian River County, 319 So.2d 596 (Fla.4th DCA 1975). In the Pasco County case this court held that a county is under no duty to zone and lack of zoning does not constitute an "act or omission" which will produce an estoppel.
Although the actions of the Town of Astatula on which Project Home relied do not amount to the kind of formal zoning actions contemplated in the cited cases, the spirit of equitable estoppel is nonetheless present. If "acts or omissions" are strictly construed to mean formal zoning, Astatula would be insulated from application against it of the doctrine of equitable estoppel simply because it had no formal zoning procedures at the time. We have determined to treat the facts of the instant case as a lilliputian *713 version of the requirements set out in the cited cases.
The town correctly states that the mere purchase of property does not give a party the right to rely on the absence of zoning. Walker v. Indian River County, supra. We believe that in view of the town's informal methods of dealing with the public, acts such as letters from the town clerk, coupled with the town's inaction after being informed of Project Home's intentions, provide the necessary elements to raise equitable estoppel. Although the amount of money expended by Project Home (including purchase price) was small in comparison to the millions of dollars expended in the cited cases, the record shows that the sum so expended is greater than Astatula's town budget for one year.
In summary, we believe Project Home has adequately shown that it relied in good faith upon "acts" of the Town of Astatula and made substantial changes in its position by the expenditure of over $8,000 for improvements. Therefore, the Town of Astatula is estopped from rebuffing that which it so graciously encouraged. As stated in City of Gainesville v. Bishop, supra, "[h]aving allowed the appellant to proceed, the city should now be estopped from asserting that, by the method of proclaiming so belatedly an emergency, the permission given by the city had become undermined..."
For the reasons set out above, we reverse the final judgment entered by the trial court and remand for further proceedings not inconsistent with this opinion.
GRIMES, C.J., and OTT, J., concur.