## Whitpain Associates, Appellant *v.* Whitpain Township, Appellee.

Argued November 18, 1981, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Louis B. Kupperman*, of counsel: *Dilworth, Paxson, Kalish & Levy*, and *John G. Kaufman* and *Edward J. Hughes*, of counsel: *Kaufman & Hughes*, for appellant.

*J. Peirce Anderson*, for appellee.

OPINION BY JUDGE CRAIG, January 28, 1982:

Whitpain Associates appeals from an order of the Court of Common Pleas of Montgomery County which sustained the preliminary objections of Whitpain Township and dismissed Associates' equity suit seeking an order to compel township processing and consideration of a planned residential development (PRD) application.

The averments and exhibits of the complaint, assumed to be true for preliminary objection purposes, provide the facts which follow.

In September, 1973, Associates filed[1] a tentative plan application (first application), pursuant to the township's PRD ordinance, for approval of a PRD on a 107.4 acre tract.

---

[1] Associates paid a nonrefundable application fee of $8,243 to the township.

The township held public hearings on Associates' tentative plan, concluding on April 2, 1974. By letter of May 10, 1974, the township's board of supervisors denied tentative plan approval, stating twenty reasons for the rejection.[2] Associates did not appeal that denial.

By letter of June 4, 1974, Associates notified the township solicitor, with copies to the township manager and a supervisor, that Associates was "preparing an amended plan which we believe will remedy all alleged defects." Associates' letter requested a rehearing on the amended plan and asked to be advised if the township would require an amended application. The township did not reply.

At all times relevant here, Associates' tract was zoned R-1, permitting single-family homes with a minimum lot size of 40,000 square feet.[3] However, on July 22, 1974, the township repealed the PRD ordinance, effective July 27, 1974.

On July 24, 1974, the township manager advised Associates' counsel by telephone that a new application should be submitted for the amended tentative plan. In a letter dated August 6, 1974, the township manager again advised Associates that Associates

---

[2] The reasons included:

[a] lack of understanding of the Township's sewage situation by the expert witnesses, general problems of sewage service to the proposed PRD, problems of drainage, failure to make plans for preservation of existing trees, problems with roads, failure to provide a schedule of development, failure to introduce a statement to show why the planned residential development would be in the public interest, failure to show water mains and water lines, failure to show fire hydrants, failure to show locations and sizes of recreational areas, failure to accurately locate streets, failure to locate sewers and storm drains and setback lines.

[3] In 1979, the tract was rezoned to R-5 which permits single-family houses on lots not less than three acres in size.

must file a new application and submit a new application fee, with the balance remaining from the original application fee to be credited toward it.

At a public meeting in December, 1974, the township supervisors advised Associates' counsel that the second application had been discussed with the township solicitor and that the repeal of the PRD ordinance would not affect the second application because the first one had been filed while the PRD ordinance was in effect. The supervisors said that the township would accept and make a decision on the second application.

On January 14, 1975, Associates filed the second application, but on February 14, 1975, the township refused to schedule a public hearing on the second application and returned Associates' fee payment. This action followed.

We note that Associates has *not* challenged the merits of the May 10, 1974 denial of its first application. Associates' suit seeks to compel the township board at least to consider the amended plan submitted with the second PRD application, even though filed more than five months after the repeal of the PRD ordinance, on the ground that the township's actions induced reliance on the part of Associates, causing them to pursue, and make expenditures upon, the amended plan and second application, rather than to pursue any other course. Although Associates does not expressly invoke the pending ordinance doctrine,[4] Associates contends that the second application, embodying a PRD plan not greatly amended, should be considered as either relating back to, or as a continuation of, the original application filed before the PRD repealer was "pending".

---

[4] *Lhormer v. Bowen*, 410 Pa. 508, 188 A.2d 747 (1963).

After examining this unusual situation from the standpoint of various possible analyses, we have concluded that Judge DAVENPORT of the trial court expressed the crux of the matter when he stated that the township actions "which encouraged appellant to continue to revise its plans and incur certain expenses were unfortunate, but irrelevant to the outcome of the matter." We adopt by paraphrase the key elements of Judge DAVENPORT's analysis:

1. The May 10, 1974 denial of the first application was unequivocal, absolute and final in its terms.[5]

2. As of June 9, 1974, the thirtieth day after that denial, the absence of an appeal by Associates, under Section 1006 of the Pennsylvania Municipalities Planning Code,[6] ended the only basis on which the legal vitality of the first application could be maintained or extended.

3. With the original application thus legally dead, the PRD repealer on July 22, 1974 eliminated the basis for any further PRD application proceedings; the validity of that repealer, in itself, has not been attacked.[7]

4. Even though the township manager, on July 24, expressed willingness to process a further PRD application, and the actions of the township officials the following December held

---

[5] The denial appears to conform to the substantial statutory requirements in Section 709 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10709.

[6] 53 P.S. §11006.

[7] Cf. cases where the record established that an ordinance revision was intended to discriminate against a particular applicant, Commercial Properties, Inc. v. Peternel, 418 Pa. 304, 211 A.2d 514 (1965) ; Limekiln Golf Course, Inc. v. Horsham Township, 1 Pa. Commonwealth Ct. 499, 275 A.2d 896 (1971).

out that prospect even more strongly, there was then nothing left of the original application to which further proceedings could relate, or from which they could extend.

Associates' second or "new" application and amended plan, filed in 1975, cannot command PRD processing without a PRD ordinance in existence, and erroneous legal positions by the township could not breathe life into an application or an ordinance, when both had expired.

We have tried to give legal effect to this township's erroneous authorization to pursue a PRD application, by an analogous use of the doctrine which, under stringent standards, recognizes vested rights in a zoning permit issued contrary to law, *Petrosky v. Zoning Hearing Board of the Township of Upper Chichester*, 485 Pa. 501, 402 A.2d 1385 (1979), but here the analogy falls short because the clearcut official denial eliminated anything which could be regarded as a surrogate for a permit in this situation; Associates' expenditures to develop the amended plan were based neither upon an existing permit nor upon a subsisting application, but only upon encouraging words issued *after* the date of the official denial and the deadline for appealing it had both passed. *Project Home, Inc. v. Town of Astatula*, 373 So.2d 710 (Fla., 2d DCA 1979), which involved a mobilehome park wrongfully authorized by a letter from a municipality, stands for nothing more than Florida's equivalent of Pennsylvania's vested wrongful permit doctrine, above noted.

Finally, Associates' position could be viewed no differently even if, in accordance with a liberal pleading policy, we regarded the present equity action as constituting, in essence, a mandamus proceeding to compel a public body merely to consider an application and reach a decision. Mandamus lies only where the applicant's right to such official consideration is clear.

*Larson v. Peirce Junior College,* 11 Pa. Commonwealth Ct. 271, 314 A.2d 572 (1973).

We affirm.

#### ORDER

Now, January 28, 1982, the order of the Court of Common Pleas of Montgomery County dated May 9, 1980 is affirmed.

Judge PALLADINO did not participate in the decision in this case.