DEMOLITION LANDFILL SERVICES, LLC, Appellant,

v.

**CITY OF DULUTH, Respondent.**

No. C6–99–1635.

Court of Appeals of Minnesota.

April 25, 2000.

Timothy R. Thornton, Jack Y. Perry, Briggs and Morgan, Minneapolis (for appellant).

William P. Dinan, Duluth City Attorney, M. Alison Lutterman, Assistant City Attorney, Duluth (for respondent).

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY,* Judge.

Appellant Demolition Landfill Services challenges the district court's order denying its motion for summary judgment and dismissing its petition for a writ of mandamus to compel respondent City of Duluth to grant appellant a special-use permit for a landfill. Appellant asserts that the city was required to issue the permit pursuant to Minn.Stat. § 15.99, subd. 2 (1998), because the city failed to approve or deny the permit application within the statutory time period. Appellant further asserts that the district court erred in concluding that the city's rejection of a resolution granting the permit constituted a denial of the permit application. We agree and reverse.

## FACTS

On December 18, 1998, appellant completed an application for a special-use permit for a landfill. On April 12, 1999, the Duluth City Council (the council) heard testimony on the application and then voted on, and rejected, a resolution approving the permit. On May 24, 1999, the council passed a resolution denying the permit.

Appellant petitioned the district court for a writ of mandamus and filed a com-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

plaint for declaratory and other relief. The parties stipulated to the withdrawal of all issues except the petition for a writ of mandamus and appellant moved for summary judgment on the petition. In support of its petition, appellant asserted that pursuant to Minn.Stat. § 15.99, subd. 2 (1998), the permit application must be approved because the city did not deny the application within 120 days of the application's submission. After concluding that there were no material facts in dispute, the district court denied appellant's motion for summary judgment and dismissed the petition, holding that the city council's action on April 12, 1999, constituted a denial of the application for a special-use permit.

## ISSUE

Did the district court err in concluding that the city's rejection of a resolution granting a special-use permit equated to a denial of the permit application and thereby err in dismissing appellant's petition for a writ of mandamus?

## ANALYSIS

■■■ When the district court's decision on a petition for a writ of mandamus is based solely on legal determinations, the appellate court's review is de novo. *Manco of Fairmont, Inc. v. Town Bd.*, 583 N.W.2d 293, 294 (Minn.App.1998), *review denied* (Minn. Oct. 20, 1998). To obtain mandamus relief a petitioner must establish

(1) the failure of an official duty clearly imposed by law; (2) a public wrong specifically injurious to petitioner; and (3) no other adequate specific legal remedy.

*Coyle v. City of Delano*, 526 N.W.2d 205, 207 (Minn.App.1995) (citations omitted).

Pursuant to Minn.Stat. § 15.99, subd. 2 (1998):

[A]n agency must approve or deny within 60 days a written request relating to zoning * * * for a permit, license, or other governmental approval of an action. Failure of an agency to deny a

request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

The agency may extend the 60–day limit an additional 60 days if the agency provides the applicant with written notice before the initial 60–day period expires. *Id.*, subd. 3(f) (1998). Statutory or home rule charter cities are included within the definition of "agencies." *Id.*, subd. 1 (1998).

The parties here agree that (1) the city is an agency within the statutory definition; (2) appellant completed its permit application December 18, 1998; and (3) the city extended its time for review an additional 60 days, giving it 120 days to make a decision. It is also undisputed that the 120 days expired on April 16, 1999.

This dispute revolves around an interpretation of the council's actions taken at the April 12, 1999, meeting. At that meeting, the council discussed appellant's application, heard testimony, and voted on a resolution entitled:

A Resolution Granting a Special Use Permit to Demolition Landfill Services, LLC for a Demolition Debris Land Disposal Facility Property Located at 1100 W. Gary Street.

The resolution failed by a 2–5 vote.

At the next meeting, held May 24, 1999, a resolution denying the permit application was introduced, and the council members voted on whether to approve the resolution. The resolution passed with a 7–2 vote. The resolution stated:

[A] special use permit application by Demolition Landfill Services, Inc., to allow for a select waste disposal demolition debris landfill at 1100 Gary Street, is hereby denied.

■■■ Appellant asserts that, contrary to the district court's conclusion, the city council's rejection of the resolution granting the permit did not equate to a denial of the permit application. *See* Minn.Stat. § 15.99, subd. 2 (requiring agency to "ap-

prove or deny" application within statutory time period). Thus, appellant contends, the agency failed to deny the permit application within 120 days and the application must be approved by default.

The city council may have intended its rejection of the resolution granting the permit to equate to a denial of the permit application. The council discussed the permit application at the April 12 meeting and after rejecting the resolution granting it, discussed whether it was necessary to enact a separate resolution denying the permit. They decided to do so after being informed by the city attorney that although such a resolution might not be "absolutely necessary, * * * it's a good practice to do that" and to provide written reasons for the denial.

Regardless of the council's intent, however, it voted on two separate resolutions: a resolution *granting* a special-use permit and a resolution *denying* a special-use permit. There is no evidence that a council member's vote on the first resolution dictated that member's vote on the second resolution. The council members were not precluded from voting against the resolution to deny the permit, regardless of their vote on the resolution to grant the permit. Thus, we cannot conclude that the council's rejection of the resolution granting the permit equated to a denial of the permit application.

 Minn.Stat. § 15.99, subd. 2, unambiguously states that failure to deny a permit application within the statutory time period mandates an approval. Because the statute is unambiguous, this court must "give effect to the statute's plain meaning." *Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986) (citations omitted); *see also* Minn. Stat. § 645.16 (1998) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). We cannot permit a municipality to bend the letter of the statute for the sake of administrative ease. *Cf. Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642, 648 (Minn.1982) (recognizing "administrative ease, while a legitimate concern, does not justify an interpretation of a statute which is inconsistent with its purpose" (citation omitted)).

Further, even if we were to conclude that the refusal to approve the resolution granting the permit constituted a denial of the permit application, it is undisputed that no written reasons were given to appellant when the council rejected the resolution granting the permit. The governing statute requires the agency to provide written reasons for a denial "at the time that it denies the request." Minn.Stat. § 15.99, subd. 2. Here, written reasons for rejecting the resolution granting the permit were provided within the resolution denying the permit that was adopted May 24.

In *Manco*, this court discussed the application of the doctrine of substantial compliance to Minn.Stat. § 15.99 (1998) and explained the distinction between mandatory and directory statutes. *Manco*, 583 N.W.2d at 295–96. This court concluded that Minn.Stat. § 15.99, subd. 3(f), which requires an agency to give reasons when it requests an extension on the initial 60–day time limit for approving or denying an application, is directory because there is no stated consequence for an agency's failure to provide reasons. *Manco*, 583 N.W.2d at 296; *see Sullivan v. Credit River Township*, 299 Minn. 170, 176–77, 217 N.W.2d 502, 507 (1974) (recognizing statute that does not state consequences of failure to comply is directory). We went on to conclude in *Manco* that because subdivision 3(f) is directory, the doctrine of substantial performance applies. *Manco*, 583 N.W.2d at 296.

 Subdivision 2, at issue here, states that the consequence of not denying a request within 60 days is automatic approval. Immediately following this stated consequence, the subdivision mandates si-

multaneous, written reasons for the denial. *Cf. R.A. Putnam & Assocs. v. City of Mendota Heights,* 510 N.W.2d 264, 267 (Minn.App.1994) ("The requirement that contemporaneous findings be recorded prevents a city from offering after-the-fact justifications * * * unrelated to the actual reasons for the initial decision." (quotation omitted)), *review denied* (Minn. Mar. 15, 1994). We conclude therefore, that simultaneous, written reasons for a denial are mandatory and not directory.[1] Because we hold that the provisions of subdivision 2 are mandatory, including the requirement that written reasons be given simultaneously with the decision, the substantial performance doctrine is not applicable to this case.

## DECISION

The Duluth City Council's rejection of a resolution approving a special-use permit did not equate to a denial of the permit application. Minn.Stat. § 15.99, subd. 2 (1998), is unambiguous and mandatory. Absent a denial within the statutory time limit and simultaneous, written reasons for the denial, the permit application is approved. Thus, the district court erred in refusing to grant appellant's petition for a writ of mandamus.

**Reversed.**

---

1. Notably, in *Manco* this court stated in dicta that subdivision 2 is mandatory because it contains consequences for noncompliance with the time-limit requirement. *Manco,* 583 N.W.2d at 295.

We reject the city's assertion that under *R.A. Putnam,* the city was not required to prepare simultaneous, written reasons for its denial and was entitled to a reasonable amount of time to prepare them. In *R.A.* *Putnam,* this court considered whether a zoning decision was arbitrary and concluded that if a record is prepared within a reasonable time after a zoning decision, arbitrariness should not be presumed. 510 N.W.2d at 267. Here, we are not deciding whether the city acted arbitrarily. Instead, we are applying the unambiguous language of Minn.Stat. § 15.99, subd. 2.