**VEIT COMPANY, et al., Relators,**

v.

**LAKE COUNTY, Minnesota, et al., Respondents.**

No. A04–1958.

Court of Appeals of Minnesota.

Jan. 17, 2006.

Jack Y. Perry, Jason R. Asmus, Briggs and Morgan, P.A., Minneapolis, MN, for relators.

Michael J. Ford, John H. Wenker, Quinlivan & Hughes, P.A., St. Cloud, MN, for respondents.

Considered and decided by PETERSON, Presiding Judge; DIETZEN, Judge; and HUSPENI, Judge.*

## OPINION

PETERSON, Judge.

On appeal from the denial of relator applicants' application to amend their conditional-use permit, relators argue that their application was approved by operation of law because respondent county did not (1) provide relators a written statement of the reasons for denying the permit within the required statutory period; and (2) provide relators a written statement of the reasons for the denial that was consistent with the reasons stated on the record. We reverse.

## FACTS

In July 2000, respondent Lake County Planning Commission granted relator B & B Aggregates a conditional-use permit (CUP) for a commercial gravel operation. In the published conditional-use order, the planning commission found that B & B's CUP request did not include crushing or washing operations and that the CUP allowed only gravel mining and screening. After B & B submitted to the planning commission a separate application for a crushing permit and sought a writ of mandamus in the district court to compel the planning commission to approve B & B's permit request, the planning commission issued an amended order granting B & B's

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

request for a crushing permit, but it did not allow blasting or quarrying. B & B amended its petition for a writ of mandamus to compel the planning commission to include blasting and quarrying in the permit, arguing that blasting and quarrying are inherent to a commercial gravel operation. The district court granted summary judgment for respondent Lake County and its planning commission, and this court affirmed. *B & B Aggregates v. Lake County*, 2002 WL 453231 (Minn.App. Mar.26, 2002).

In June 2003, B & B applied to Lake County to "add blasting and quarrying to previously approved 'CUP.'" On August 18, 2003, the planning commission denied B & B's application. B & B did not challenge the August 18, 2003 decision.

On June 15, 2004, B & B, this time joined by relator Veit Company, submitted another application to add blasting and quarrying to its previously approved CUP. The planning commission conducted a hearing on relators' application on August 16, 2004. At the close of the hearing, a commission member moved to deny the CUP application based on relators' failure to show that the proposed use would not create potential health and safety, environmental, lighting, noise, signing, or visual problems and would not be detrimental to the rightful use and enjoyment of other property in the immediate vicinity nor substantially diminish or impair property values within the vicinity. The motion carried. At the meeting, a written notice of denial was given to John Pippert, a vice president of Veit. The notice does not list any reasons for the denial. In October 2004, relators received from the planning commission a written order that states that relators' application is denied and includes as an attachment a planning-commission resolution that states reasons for the denial.

By writ of certiorari, relators sought this court's review of the planning commission's denial of their CUP application.

## ISSUE

Was relators' CUP application approved by operation of law because the planning commission failed to comply with the requirements in Minn.Stat. § 15.99, subd. 2(c) (Supp.2003)?

## ANALYSIS

Because the planning commission determined facts about the nature and effects of relators' proposed land use and then exercised its discretion in determining whether to allow the use, the denial of relators' application was a quasi-judicial decision. *Neitzel v. County of Redwood*, 521 N.W.2d 73, 75 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994). The supreme court has explained

that in the absence of an adequate method of review or legal remedy, judicial review of the quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiorari. Review by certiorari is limited to an inspection of the record of the inferior tribunal in which the court is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

*Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992) (quoting *State ex rel. Ging v. Bd. of Educ. of Duluth*, 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942) (overruled on other grounds)).

Relators argue that when denying their CUP application, the planning commission

failed to comply with the requirements in Minn.Stat. § 15.99, subd. 2(c) (Supp.2003), that the commission state reasons for the denial in writing. Relators contend that because the planning commission failed to comply with these statutory requirements, they are entitled to have their application granted. Respondents contend that the written denial that relators received on August 16, 2004, and the verbatim transcript of the August 16 hearing conform to the requirements of section 15.99.

■ Statutory interpretation is a question of law subject to de novo review. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001).

Minn.Stat. § 15.99, subd. 2 (Supp.2003), states:

(a) Except as otherwise provided in this section, section 462.358, subdivision 3b, or chapter 505, and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning, septic systems, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. *Failure of an agency to deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.*

(b) When a vote on a resolution or properly made motion to approve a request fails for any reason, the failure shall constitute a denial of the request provided that those voting against the motion state on the record the reasons why they oppose the request. A denial of a request because of a failure to approve a resolution or motion does not preclude an immediate submission of a same or similar request.

(c) Except as provided in paragraph (b), if an agency, other than a multi-member governing body, denies the request, it must state in writing the reasons for the denial at the time that it denies the request. *If a multimember governing body denies a request, it must state the reasons for denial on the record and provide the applicant in writing a statement of the reasons for the denial. If the written statement is not adopted at the same time as the denial, it must be adopted at the next meeting following the denial of the request but before the expiration of the time allowed for making a decision under this section. The written statement must be consistent with the reasons stated in the record at the time of the denial. The written statement must be provided to the applicant upon adoption.*

(Emphasis added.) The definition of "agency" includes a county. Minn.Stat. § 15.99, subd. 1(a) (Supp.2003).

Under Minn.Stat. § 15.99, subd. 2(a), an agency has 60 days to approve or deny a zoning request, and if the agency fails to deny the request within 60 days, the request is approved by operation of law. Minn.Stat. § 15.99, subd. 2(a), also requires that if an agency denies a zoning request, the agency "must state in writing the reasons for the denial at the time that it denies the request." There is no dispute that the planning commission denied relators' CUP application within the permitted 60–day period; a motion to deny the application was passed at the August 16, 2004 [1] commission meeting, and a written notice

---

**1.** August 14, 2004, was the 60th day after relators submitted their application. Because August 14 fell on a Saturday, the deadline for denying the application was extended to the following business day, Monday, August 16, 2004. *See Gun Lake Ass'n v. County of Aitkin,* 612 N.W.2d 177, 181 (Minn.App.2000) (citing Minn.Stat. § 645.15).

of denial was given to relators' representative at the meeting. But the written notice of denial did not state any reasons for the denial.

In *Demolition Landfill Servs., LLC v. City of Duluth,* 609 N.W.2d 278 (Minn. App.2000), *review denied* (Minn. July 25, 2000), this court construed as mandatory the requirement in Minn.Stat. § 15.99, subd. 2 (1998), that "[i]f an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request." The *Demolition Landfill* court concluded, "Absent a denial within the statutory time limit and simultaneous, written reasons for the denial, the permit application is approved." 609 N.W.2d at 282. By requiring "simultaneous, written reasons for the denial" to avoid automatic approval, the *Demolition Landfill* court construed the statute to mean that written reasons for a denial are an essential part of the denial. *Id.* at 281–82.

Following the *Demolition Landfill* decision, the legislature amended subdivision two of section 15.99 by designating the existing subdivision two as clause (a) and adding clauses (b) and (c). 2003 Minn. Laws ch. 41, § 1. The legislature did not amend the provision construed as mandatory by the *Demolition Landfill* court. Therefore, the *Demolition Landfill* construction of the written-reasons requirement applies to this case. *See State v. Anderson,* 666 N.W.2d 696, 700 (Minn. 2003) (stating that when the legislature does not amend the supreme court's construction of a statute, the court's construction stands) (citing *W. Union Tel. Co. v.*

*Spaeth,* 232 Minn. 128, 131–32, 44 N.W.2d 440, 441–42 (Minn.1950) ("The judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally"); *see also* Minn.Stat. § 645.17 (2002) (providing that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language")).

The new provisions in clause (c) that apply to a multimember governing body (1) continue the requirement that if a request is denied, the multimember governing body must state the reasons for the denial in writing; and (2) add a requirement that the written statement be provided to the applicant. But for a multimember governing body, it is not necessary that the written statement of the reasons for a denial be adopted and provided to the applicant at the time of the denial. However, if a multimember governing body does not adopt a written statement of the reasons for a denial at the time of the denial, the written statement must be adopted at the multimember governing body's next meeting following the denial and before the permitted period for denying a request expires.[2] Although these new provisions provide an alternative method for a multimember governing body to satisfy the requirement that reasons for a denial be stated in writing, they do not provide a basis for this court to depart from the *Demolition Landfill* court's conclusion that the statutory written-reason requirements are mandatory.

---

2. Under Minn.Stat. § 15.99, subd. 2, the permitted period for denying a request is ordinarily 60 days. But under Minn.Stat. § 15.99, subd. 3(f) (Supp.2003), "[a]n agency may extend the time limit in subdivision 2 before the end of the initial 60-day period by providing written notice of the extension to the applicant. The notification must state the reasons for the extension and its anticipated length, which may not exceed 60 days unless approved by the applicant." There is no claim that the planning commission extended the initial 60-day period.

Like clause (a), clause (c) applies the mandatory term "must" to the requirements that (1) a multimember governing body state the reasons for denial on the record and provide the applicant a written statement of the reasons for the denial; (2) written reasons be adopted at the multimember governing body's next meeting following the denial and within the 60–day time period for denying a request; (3) the written statement be consistent with the reasons stated in the record at the time of the denial; and (4) the written statement be provided to the applicant upon adoption. *See* Minn.Stat. § 645.44, subd. 15a (2004) (stating that " 'must' is mandatory"). Furthermore, the written-reasons requirement in clause (c) applicable to an agency other than a multimember governing body is identical with that construed in *Demolition Landfill.* Because the legislature used language that, on its face, indicates that these new requirements are mandatory and enacted the new requirements after this court construed the simultaneous-written-reason requirement in the original section 15.99 as mandatory, we conclude that the new requirements in Minn.Stat. § 15.99, subd. 2(c), are also mandatory.

■ It is undisputed that the planning commission did not adopt a written statement of the reasons for denying relators' CUP application and provide the written statement to relators at the August 16, 2004 meeting where the application was denied. By itself, this does not mean that the application is granted, because the new requirements in subdivision 2(c) permitted the planning commission to adopt a written statement of the reasons for the denial at its next meeting before the 60–day period for making a decision expired. But the August 16, 2004 meeting occurred on the last day of the 60–day period for making a decision, and as a result, the planning commission's next meeting did not occur before the 60–day period expired. Consequently, the planning commission could not use the alternative method for a multimember governing body to satisfy the requirement that reasons for a denial be stated in writing.

Respondents argue that, notwithstanding *Demolition Landfill,* the purpose of the requirement that a denial of a permit application be supported by written reasons is to prevent post hoc· justifications for a denial and that the record, particularly the transcript of the August 16, 2004 hearing, provides sufficient justification for the planning commission's denial of relators' permit application. But even if the transcript could serve as a written statement of the reasons for the denial of relators' application, the record does not demonstrate that the planning commission transcribed the recording of the hearing, adopted the transcript within the 60–day statutory period, and provided the transcript to relators upon adoption.

Because the requirement that reasons for a denial be stated in writing is mandatory, and the planning commission did not use either of the two permitted methods for a multimember governing body to meet this requirement, relators' CUP application was approved by operation of law. Because the planning commission's failure to comply with the requirement that reasons for a denial be stated in writing means that the application is approved by operation of law, we do not address relators' additional arguments why their application should not have been denied.

**DECISION**

Because the planning commission did not (1) provide relators a written statement of the reasons for denying relators' application at the August 16, 2004 meeting, or (2) adopt a written statement of the

reasons for the denial at its next meeting and before the 60–day period for making a decision expired and provide the written statement to relators, relators' CUP application is approved under Minn.Stat. § 15.99, subd. 2, and we reverse the planning commission's denial of relators' application.

**Reversed.**