# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1118

_____

Minnesota Towers, Inc., et al.,          *
                                       *

     Plaintiffs - Appellees,       *

                                       *   Appeal from the United States
    v.                             *   District Court for the
                                       *   District of Minnesota.

City of Duluth,               *

                                       *

     Defendant - Appellant.     *

_____

Submitted: September 25, 2006
Filed: January 10, 2007

_____

Before LOKEN, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

LOKEN, Chief Judge.

Duluth property owner James Bechthold leased a commercial site to Minnesota Towers, Inc., for the construction of a 195-foot telecommunications tower. American Cellular Corporation and other wireless cell phone service providers planned to use the tower to better serve the Piedmont Heights area of Duluth. Minnesota Towers and Bechthold (hereafter collectively referred to as Minnesota Towers) applied to the City of Duluth for a special use permit to construct the tower, as required by the City's zoning laws. The Duluth Planning Commission recommended approval, but the Duluth City Council, the City's final decision-maker, rejected the Commission's approval resolution. Minnesota Towers then filed this action challenging the City's adverse action under federal and state law. The district court denied Minnesota

Towers summary judgment on its federal claims but granted summary judgment on the ground that the City's denial was untimely and therefore the application must be deemed approved as a matter of state law. The City appeals. We reverse.

## I. The Governing Minnesota Statute

In 1995, the Minnesota Legislature passed a statute providing that a city must approve or deny a request for a zoning permit within sixty days unless the applicant is given written notice that the period has been extended an additional sixty days. 1995 Minn. Laws ch. 248, art. 18, § 1, codified at Minn. Stat. § 15.99, subd. 2, 3(f) (1996). Subdivision 2 further provided that failure to deny a request within sixty days "is approval of the request." In addition, if a city denies a request, "it must state in writing the reasons for the denial at the time that it denies the request." Minnesota courts have rigorously enforced these requirements against non-complying cities in cases such as Demolition Landfill Servs., LLC v. City of Duluth, 609 N.W.2d 278 (Minn. App. 2000).

In Demolition Landfill, the City voted down a resolution approving a permit application. Though the vote in Demolition Landfill was taken within the statutory deadline, the court held that the application was approved by operation of § 15.99, as initially enacted, because (i) voting down a resolution approving an application was *not* a denial for purposes of subdivision 2, and (ii) in any event the City did not provide contemporaneous written reasons for its action, as subdivision 2 required. 609 N.W.2d at 281. The Legislature responded by amending subdivision 2, making the original provision subdivision 2(a) and adding subdivisions 2(b) and 2(c), which provide in relevant part:

> (b) When a vote on a resolution or properly made motion to approve a request fails for any reason, the failure shall constitute a denial of the request provided that those voting against the motion state on the record the reasons why they oppose the request. . . .

(c) Except as provided in paragraph (b), if an agency, other than a multimember governing body, denies the request, it must state in writing the reasons for the denial at the time that it denies the request. If a multimember governing body denies a request, it must state the reasons for denial on the record and provide the applicant in writing a statement of the reasons for the denial. If the written statement is not adopted at the same time as the denial, it must be adopted at the next meeting following the denial . . . but before the expiration of the time allowed for making a decision under this section. The written statement must be consistent with the reasons stated in the record at the time of the denial.

2003 Minn. Laws ch. 41, § 1, codified at Minn. Stat. § 15.99, subd. 2(b), (c).

After the statute was amended, a multi-member governing body voted in favor of a proposed denial resolution on the last day of the sixty-day period but failed to provide the applicant with the timely written statement of reasons that subdivision 2(c) requires. The Minnesota Court of Appeals held that the application was deemed approved as a matter of law because new subdivision 2(c) did not overrule the Demolition Landfill holding that a timely written statement of reasons is mandatory. Veit Co. v. Lake County, 707 N.W.2d 725, 729-30 (Minn. App. 2006).

## II. Background

In this case, Minnesota Towers applied for the special use permit on September 29, 2004. The Planning Commission voted to approve the application on November 9 and forwarded a proposed approval resolution to the City Council. The City Council voted 8-0 to reject the approval resolution on November 22, fifty-four days after Minnesota Towers filed the application. Six Council members stated on the record their reasons for denying the special use permit. On November 23, the Duluth City Attorney sent a letter notifying Minnesota Towers of the Council's action and setting forth numerous reasons why the application was denied. The City Council

passed a resolution adopting the City Attorney's statement of reasons on December 6, sixty-eight days after the application was initially filed.

The summary judgment record reflects that it is Planning Commission practice to extend the statutory sixty-day period to 120 days for every application by mailing the extension notice § 15.99, subd. 3(f), requires. However, in this case, the Senior Planner's secretary drafted an extension letter, but no copy of a signed letter can be found in the pertinent files of the City, of either applicant, or of Minnesota Towers's engineer and land surveyor, who would normally have been sent courtesy copies.

Minnesota Towers argued, and the district court agreed, that the City Attorney's November 23 letter to Minnesota Towers was not a written statement of reasons *by the City Council*, as subdivision 2(c) requires, and the City Council's December 6 resolution did not adopt this statement of reasons within the statutory sixty-day period. Accordingly, the City failed to take proper action denying the application within sixty days because it did not comply with subdivision 2(c) as construed in Veit. Turning to the subdivision 3(f) extension issue, the court concluded, after discovery on the issue, that an extension letter was never sent. Accordingly, the court ruled that the application was approved by operation of law because the sixty-day deadline in § 15.99 was neither met nor extended. On appeal, the City argues that the district court erred in applying subdivision 2(c) of § 15.99 and also overlooked genuine issues of material fact precluding summary judgment on the extension issue. Given our resolution of the first issue, we need not reach the second.

### III. Discussion

In this case, as in Demolition Landfill, the City Council took action by voting down a proposed resolution approving the Minnesota Towers application, rather than by voting in favor of a resolution denying the requested permit. The City argues that its actions were therefore taken under and are governed by subdivision 2(b) of

-4-

§ 15.99, not subdivision 2(c). Subdivision 2(b) does not expressly require a written statement of reasons within the sixty-day period, only that Council members "state on the record the reasons why they oppose the request." Therefore, the City contends, its denial was timely under § 15.99.

Neither Veit nor any other reported Minnesota decision resolves the question whether the provisions of subdivision 2(c) that drove the result in Veit apply to a denial governed by subdivision 2(b).[1] As a textual matter, the answer is far from clear. Subdivision 2(b) appears to overrule both aspects of the holding in Demolition Landfill. Under subdivision 2(b), an action voting down an approval resolution is a denial of the request for purposes of § 15.99, subd. 2, and the requirement in subdivision 2(a) that the City provide a written statement of reasons "at the time that it denies the request" is satisfied if those voting against the resolution "state on the record the reasons why they oppose the request." Thus, as the district court recognized, the issue under the amended statute turns on the proper construction of subdivision 2(c).

The first sentence of subdivision 2(c) begins, "Except as provided in paragraph (b)." If that introductory phrase applies to all of subdivision 2(c), then subdivision 2(b) is free standing, and the City's interpretation is correct. On the other hand, Minnesota Towers argues that the second, third, and fourth sentences of subdivision 2(c) address the situation covered by subdivision 2(b) and require a multimember governing body such as the City Council to provide a contemporaneous statement of reasons for the denial on the record and to follow that action by adopting a written statement of reasons "at the next meeting following the denial . . . but before the expiration of the time allowed for making a decision under this section." Minnesota

---

[1]See Hans Hagen Homes, Inc. v. City of Minnetrista, 713 N.W.2d 916, 922-23 (Minn. App. 2006) (agreeing with Veit's construction of subd. 2(a) and 2(c) without discussing subd. 2(b)), review granted, Orders on Petitions for Further Review Filed -- July 19, 2006, Minn. Law. App. Cts. Ed., July 31, 2006, at A21.

Towers suggests that, unless subdivision 2(b) is construed as being subject to these requirements, no written statement of reasons will be required when a request is denied under subdivision 2(b), nullifying one of the statute's important purposes.

Our resolution of this issue turns on a practical reality, reinforced by a textual nuance in the statute. When the agenda of a city council meeting includes a proposed resolution *denying* a zoning or permit request, the city's staff know to prepare a written statement of reasons supporting the denial in advance of the meeting. On the other hand, when the agenda item is a proposed resolution *approving* the request but the city council votes down that proposal, staff will likely not have anticipated that action and prepared a written statement supporting it before the action is taken. Thus, if subdivision 2(c) as construed in Veit and Hans Hagen Homes applies to denials effected under subdivision 2(b), the statutory sixty-day period will be effectively reduced by whatever time is required under local law to deny the request at one meeting and adopt a written statement of reasons at the next meeting.

We infer that the Legislature recognized the significance of this practical reality from a textual nuance in the statute. Subdivision 2(b) provides that, when a request is denied by voting down an approval resolution, "those voting against the motion [must] state on the record the reasons why *they* oppose the request." But subdivision 2(c) provides that, when a city council "denies a request, *it* must state the reasons for denial on the record," and a written statement of reasons adopted at the next meeting "must be consistent with the reasons stated in the record at the time of the denial." Here, for example, no less than six members of the City Council stated on the record their personal reasons for voting against the approval resolution. If subdivision 2(c) applies to such actions, staff must then draft a written statement "consistent with" what may be disparate reasons stated in the record by individual council members, virtually guaranteeing that even timely written statements under subdivision 2(b) will be subject to painstaking judicial review for consistency.

-6-

For these reasons, we conclude that imposing the mandatory written statement requirements of subdivision 2(c) would effectively defeat the obvious purpose of subdivision 2(b). We therefore conclude that the Legislature must have intended the term "denies a request" in the second sentence of subdivision 2(c) to mean actions by multimember governing bodies *approving* resolutions to deny a permit or zoning request. In reaching this conclusion, we agree with Minnesota Towers that requiring government agencies to provide written statements of reasons for denying zoning requests was an important purpose of § 15.99. Indeed, we think such a requirement may fairly be implied from subdivision 2(b)'s statutory origins. But the issue is not whether the City was required to provide a written statement of reasons within a reasonable time.[2] The issue is whether subdivision 2(c) mandates that a written statement be provided within § 15.99's sixty-day period for denials effected in accordance with subdivision 2(b). Though the question is not free from doubt, we conclude the Supreme Court of Minnesota would answer it in the negative and uphold the City's denial of the Minnesota Towers application.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

BEAM, Circuit Judge, dissenting.

The court concedes that its conclusions are "not free from doubt." Ante at 7. I concur in this observation to the point that I agree with the district court's analysis and would affirm.

Duluth, by its adopted procedures, admits, in essence, that it faced a firm sixty-day deadline in meeting all of its statutory obligations *unless* plaintiffs/appellees were "given written notice that the period has been extended an additional sixty days."

---

[2]Federal law required the City to provide a written decision denying a request for a permit for a telecommunications tower. See 47 U.S.C. § 332(c)(7)(B)(iii).

<u>Ante</u> at 2. It apparently did not do this or, at least, cannot now prove that it followed this previously established and, in this case, necessary protocol. Duluth now seeks to use this court as a cat's paw to "pull its burning chestnuts from the fire." Dictionary of Phrase and Fable (1898). Minnesota law, established both by statute and the several judicial decisions cited by the court, in conjunction with applicable City meeting procedures obviously prompted Duluth "to extend the statutory sixty-day period to 120 days by mailing *every* applicant the extension notice" referred to above. <u>Ante</u> at 4 (emphasis added). Thus, the court's resolution of the opposing parties' views on legislative intent, based on a "textual nuance in the statute" and a perceived shortening of the legislatively mandated sixty-day period "by whatever time is required under local law to deny [a] request at one meeting and adopt a written statement" at the next, loses its force. <u>Ante</u> at 6. The solution for Duluth was to act within the statutorily mandated sixty-day period or to send the extension notice as required by the Minnesota lawmakers and thereby elongate the time it had to take action within the framework of its regularly adopted local meeting schedules. It did neither. So, the permit should issue as a matter of law.

Accordingly, I dissent.

_____