**HANS HAGEN HOMES,
INC., Respondent,**

v.

**CITY OF MINNETRISTA, Appellant.**

No. A05–1686.

Supreme Court of Minnesota.

March 15, 2007.

Gary A. Van Cleve, Larkin, Hoffman, Daly & Lindgren, Bloomington, for respondent.

Justin Lee Templin, George C. Hoff, Hoff, Barry & Kuderer, P.A., Eden Prairie, for appellant.

Miriam Elizabeth Stone, Builder Assn. of Twin Cities, Roseville, Thomas H. Boyd, Lloyd W. Grooms, Winthrop & Weinstine, P.A., Minneapolis, for amicus curiae Builders Assn. of Twin Cities.

Scott A. Smith, Courtney Ward-Reichard, Dana M. Lenahan, Halleland Lewis Nilan & Johnson, Minneapolis, for amicus curiae for Minnesota Center for Environmental Advocacy.

Susan Naughton, League of Minnesota Cities, St. Paul, for amicus curiae League of Minnesota Cities.

## OPINION

HANSON, Justice.

This appeal presents the question of whether a city's failure to timely provide to an applicant a written statement of the reasons for the denial of a request regarding zoning, as required by subdivision 2(c) of Minn.Stat. § 15.99 (2004), triggers the automatic approval penalty for the failure

of a city to timely "deny a request," as provided in subdivision 2(a) of that section. Respondent Hans Hagen Homes, Inc. submitted a written application to appellant City of Minnetrista, requesting (1) rezoning of 220 acres of land and (2) an amendment to the City's Comprehensive Plan. Hagen commenced a mandamus action against the City, claiming that although the City denied the request before the response deadline, it failed to provide to Hagen a written statement of the reasons for denial before the response deadline. Both parties moved for summary judgment. The district court granted Hagen's motion and the court of appeals affirmed. *Hans Hagen Homes, Inc. v. City of Minnetrista*, 713 N.W.2d 916, 923 (Minn.App. 2006), *rev. granted* (Minn. July 19, 2006). We reverse.

Hagen controls property consisting of six parcels of land in Minnetrista, containing approximately 220 acres. On May 18, 2004, Hagen submitted to the City an application for rezoning and for an amendment to the City's Comprehensive Plan. Specifically, Hagen asked the City to rezone the property from Rural Agriculture to Medium Density Multi–Family Residential Planned Unit Development (R–4–PUD), and to adjust the Municipal Urban Services Area (MUSA) line to provide public services to the property. Under section 15.99, subdivision 2(a), the City was required to approve or deny the request within 60 days. On June 30, 2004, the City sent a letter to Hagen stating that it would need an extension on its response deadline. Hagen agreed to the extension, creating a response deadline of November 30, 2004.

On October 4, 2004, the city council held a public hearing to discuss Hagen's application. A representative from Hagen was present. After listening to public comments and presentations, the city council voted to deny the application, with one member stating that Hagen's requests are "not within the Comp[rehensive] Plan, and we need to have more studies based on traffic and other issues." On October 18, 2004, the city council approved the minutes of the October 4 meeting and adopted Resolution 89–04, which contained written reasons for denying Hagen's application. No representative of Hagen was present at the October 18 meeting.

The minutes of the October 18 meeting were approved on November 3, 2004, and the minutes from both the October 4 and October 18 meetings were posted on the City's website before the November 30 response deadline. But the City did not directly deliver a written statement of the reasons for denial to Hagen until Hagen requested a copy of the resolution on December 9, 2004.

Hagen commenced this action against the City requesting a writ of mandamus directing the City to grant Hagen's application on the grounds that: (1) the City failed to "provide" Hagen with a written statement denying the application before the response deadline; and (2) the City's written statement was not consistent with the reasons stated on the record. The district court granted Hagen's motion for summary judgment, stating that although the City's written statement was consistent with the oral reasons stated on the record, "[u]nder the plain language of Minn.Stat. § 15.99 and clear precedent, the City violated Minn.Stat. § 15.99 by failing to provide a written statement to Hans Hagen by the November 30, 2004 deadline." The court concluded that such a failure "mandates automatic approval of Hans Hagen's application for rezoning and extension of the MUSA line."

The court of appeals affirmed. *Hans Hagen Homes*, 713 N.W.2d at 923. The court of appeals reasoned that, although section 15.99, subdivision 2(c), did not spe-

cifically include a penalty clause, clauses (a) and (c) should be read together:

> In a subdivided section that focuses successively on various aspects of the response deadline, a presumption that the contents of each subdivision must be restated in the parallel subdivisions would defeat the obvious purpose of the serial division. The context and the coordinated effect establish that the penalty in subdivision 2(a) is interrelated with, and applies to, the requirements in subdivision 2(c). Importantly, if subdivision 2(a)'s penalty did not apply to subdivision 2(c), the statute would provide no penalty for violating the mandatory requirements in subdivision 2(c).

713 N.W.2d at 921.

▆▆ We granted the City's petition for further review to consider whether the City's failure to provide the written statement within the response period triggered the automatic approval penalty. This court reviews the issuance of a writ of mandamus de novo. *McIntosh v. Davis,* 441 N.W.2d 115, 118 (Minn.1989). Where statutory construction is necessary to reach a determination on whether the district court erred by issuing the writ of mandamus, that statutory interpretation is a question of law that this court also reviews de novo. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). When asked to construe a statute, we must first "determine whether the statute's language, on its face, is ambiguous." *Id.* A statute is ambiguous when the language is subject to more than one reasonable interpretation. *Id.* Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and we apply the statute's plain meaning. *Id.*

The statutory language at issue here is found in subdivisions 2(a) and (c) of section 15.99, which provide:

> (a) Except as otherwise provided in this section, * * * and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning, septic systems, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. *Failure of an agency to deny a request within 60 days is approval of the request.* If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

> (c) * * * If a multimember governing body denies a request, it must state the reasons for denial on the record and provide the applicant in writing a statement of the reasons for the denial. *If the written statement is not adopted at the same time as the denial, it must be adopted at the next meeting following the denial of the request but before the expiration of the time allowed for making a decision under this section.* The written statement must be consistent with the reasons stated in the record at the time of the denial. *The written statement must be provided to the applicant upon adoption.*

(Emphasis added.) It is undisputed that the City denied Hagen's application and stated in writing the reasons for its denial before the response deadline. Likewise, it is undisputed that the City did not directly deliver a written statement of the reasons for denial to Hagen before the response deadline.

The City argues that the automatic approval penalty only applies to noncompliance with the requirement of subdivision 2(a)—that the City make the decision before the response deadline—and does not

apply to the requirement added by subdivision 2(c)—that the City provide the written statement of the reasons for the denial to the applicant. The City acknowledges that the requirement of subdivision 2(a) is mandatory, but argues that those of subdivision 2(c) are merely directory. In the alternative, the City argues that we should imply a prejudice standard to prevent automatic approval where the applicant has not been prejudiced by the City's failure to comply with subdivision 2(c).

The legislature enacted section 15.99 in 1995 to establish deadlines for local governments to take action on zoning applications. Act of June 1, 1995, ch. 248, art. 18, § 1, 1995 Minn. Laws 2415, 2477–78; *see also Am. Tower, L.P.*, 636 N.W.2d at 312. As originally enacted, section 15.99, subdivision 2, required cities to do two things before the response deadline: (1) approve or deny the application; and (2) if denied, state in writing the reasons for the denial. Minn.Stat. § 15.99 (1996). And subdivision 2 provided that the failure to "deny a request" before the response deadline "is approval of the request." *Id.*

█ Section 15.99 was amended in 2003 to, among other changes, renumber prior subdivision 2 as subdivision 2(a) and to add new subdivisions 2(b) and 2(c). Act of May 13, 2003, ch. 41, § 1, 2003 Minn. Laws 321, 321–22. Although subdivision 2(b) is not relevant here, subdivision 2(c) adds a requirement that the written statement of the reasons for denial "must be provided to the applicant upon adoption." But, unlike subdivision 2(a), subdivision 2(c) does not express any consequence for the failure to comply. We conclude that the City's failure to timely provide a written statement of the reasons for its denial to Hagen, as required by subdivision 2(c), does not result in the automatic approval penalty that is provided in subdivision 2(a), for several reasons.

First, we conclude that the statute is not ambiguous. The automatic approval penalty applies only to the "[f]ailure of an agency to deny a request within 60 days" and denial is complete when a city votes to deny the application and adopts a written statement of its reasons for denial, whether or not the city provides notice to the applicant.[1] This reading of the automatic approval penalty language in subdivision 2(a) is required because, when that penalty was originally enacted in 1995, the only requirements imposed on a city were those formerly contained in subdivision 2 and now contained in subdivision 2(a)—to approve or deny the request and to state the reason(s) for a denial in writing. Because there was no requirement in the original statute that a city provide a written statement of the reasons for denial to the applicant, the words "deny a request" could at most refer to the requirements of then subdivision 2 that a city vote to deny the application and reduce its reasons for denial to writing.

Second, when the legislature amended section 15.99 in 2003, by renumbering subdivision 2 to subdivision 2(a) and adding subdivision 2(c), the legislature did not change any of the words of the automatic approval penalty, which remained tied to

---

[1] The automatic approval penalty language of subdivision 2(a) could be read even more narrowly. Because the triggering event of the penalty is the failure "to deny a request," the penalty could be read to apply only where the City has not acted on the request (i.e., has not held a public hearing and taken a vote) before the expiration of the response deadline. But, because the City does not argue for that narrower construction, and the facts before us show that the City did both—acted to deny and stated its reasons for denial in writing—before the expiration of the response deadline, we will not decide that precise issue and instead leave it for another day.

the failure of a city "to deny a request." Further, the legislature did not provide a penalty in subdivision 2(c) or reference the penalty from subdivision 2(a) in subdivision 2(c).

Third, we disagree with the conclusion of the court of appeals that, without a penalty for noncompliance, subdivision 2(c) would be "superfluous" and would "have no effect." *Hans Hagen Homes,* 713 N.W.2d at 921. We know of no reason why the legislature must provide a consequence for noncompliance for every requirement of a statute. To the contrary, our case law recognizes that a statute may contain a requirement but provide no consequence for noncompliance, in which case we regard the statute as directory, not mandatory. In *State by Lord v. Frisby,* we said:

> It is generally said that, where the provisions of the statute do not relate to the essence of the thing to be done, are merely incidental or subsidiary to the chief purpose of the law, are not designed for the protection of third persons, and do not declare the consequences of a failure of compliance, the statute will ordinarily be construed as directory and not as mandatory.

260 Minn. 70, 76, 108 N.W.2d 769, 773 (1961); *see also Sullivan v. Credit River Twp.,* 299 Minn. 170, 176–77, 217 N.W.2d 502, 507 (1974) (stating that when a statute fails to provide consequences for failure to comply it is directory rather than mandatory).

We recognize that we have sometimes called a statute "mandatory" simply because it uses the words "shall" or "must." For example, in *State by Beaulieu v. RSJ, Inc.,* we held that a statute that included the word "shall" was "mandatory" even though it did not provide consequences for failing to comply with its requirements. 552 N.W.2d 695, 701–02 (Minn.1996). But

we have used the word "mandatory" in two different contexts, each suggesting a slightly different meaning. In *Beaulieu,* our use of the word "mandatory" was only meant to confirm that the statutory word "shall" is mandatory, not permissive. *See id.;* Minn.Stat. § 645.44, subds. 15, 16 (2006) (defining "may" and "shall"). We did not intend to suggest that we could imply from the word "shall" that there would be specific but unexpressed consequences for noncompliance with a statute. In *Sullivan* and *Frisby,* we used the word "mandatory" in a different context, to distinguish mandatory from directory, based on whether the statute expressed specific consequences for noncompliance. *Sullivan,* 299 Minn. at 176–77, 217 N.W.2d at 507; *Frisby,* 260 Minn. at 76, 108 N.W.2d at 773.

■ The failure of a statute to provide consequences for noncompliance with its requirements does not make the statute ineffective. When a statute requires a governmental body to perform some act, it is reasonable to assume the governmental body will do so or it could be compelled to do so by mandamus. *See, e.g., Latourell v. Dempsey,* 518 N.W.2d 564, 566 (Minn.1994) (mandamus granted to compel trial court to appoint counsel); *County of Ramsey v. Stevens,* 283 N.W.2d 918, 922 (Minn.1979) (mandamus granted when city had a legal duty to enact ordinance).

Our view is consistent with the decisions of the court of appeals under section 15.99, subdivision 2, prior to the 2003 amendments. The court of appeals interpreted the automatic approval penalty to be triggered by a city's failure to do two things within the response deadline: (1) to make a decision; and (2) to reduce the reasons for any denial to writing. *See Demolition Landfill Servs., LLC v. City of Duluth,* 609 N.W.2d 278 (Minn.App.2000), *rev. denied* (Minn. July 25, 2000); *Manco of Fair-*

*mont, Inc. v. Town Bd. of Rock Dell Twp.,* 583 N.W.2d 293 (Minn.App.1998), *rev. denied* (Minn. Oct. 20, 1998).[2] In *Demolition Landfill Services,* the court of appeals said:

> We conclude therefore, that simultaneous, written reasons for a denial are mandatory and not directory. Because we hold that the provisions of subdivision 2 are mandatory, including the requirement that written reasons be given simultaneously with the decision, the substantial performance doctrine is not applicable to this case.

609 N.W.2d at 282 (footnote omitted).

The court of appeals decision in *Manco* is also instructive because it made a distinction between the mandatory and directory parts of section 15.99. 583 N.W.2d at 295–96. It held that the provision of the former subdivision 2 and current subdivision 2(a), requiring that a decision be made within the response deadline, was mandatory because the automatic approval penalty provides the consequence for failing to comply. 583 N.W.2d at 295. But it held that the provision of subdivision 3(f), that a notice to extend the 60–day deadline "must state the reasons for the extension," is only directory because subdivision 3(f) did not express any consequences for failure to comply. 583 N.W.2d at 296. Likewise, we conclude that the requirement of subdivision 2(a), that a city deny a request within the response period, is mandatory because the automatic approval penalty applies to noncompliance with that subdivision, but that the requirement of subdivision 2(c), that a city provide the written statement of the reasons for denial to the applicant, is only directory because subdivision 2(c) does not contain an automatic approval penalty or express any other consequence of noncompliance.

Our decision is consistent with subdivision 3(c) of section 15.99, which states that an "agency response meets the 60–day time limit if the agency can document that the response was sent within 60 days of receipt of the written request." Because subdivision 3(c) was part of the original enactment of section 15.99, when that section did not contain any requirement that a city provide a written statement of reasons for denial to the applicant, we necessarily read subdivision 3(c) to mean simply that this is one way that a city can prove that it has met the 60–day deadline, but it is not the *only* way that a city may do so.[3]

2. We recently reviewed a third decision of the court of appeals under the pre–2003 amendments to section 15.99, subdivision 2. *See Breza v. City of Minnetrista,* 725 N.W.2d 106 (Minn.2006). There we narrowly construed subdivision 2 in favor of the City of Minnetrista, holding that where the scope of a city's authority to grant an exemption is limited by state law, the automatic approval penalty of subdivision 2 cannot operate effectively to grant a broader exemption. 725 N.W.2d at 114. Before *Breza,* we had only addressed section 15.99 in *American Tower,* where we were asked to construe subdivisions 2, 3(a), and 3(f), to determine whether a city could extend the initial response deadline before the 60–day period began to run. 636 N.W.2d at 312–13. We held that a city could not prospectively extend the response deadline and thus was required to issue a requested conditional use permit. *Id.* at 313.

3. In this regard, Hagen's reliance on *Concept Properties, LLP v. City of Minnetrista,* is misplaced. 694 N.W.2d 804 (Minn.App.2005), *rev. denied* (Minn. July 19, 2005). There, the court of appeals said only that "it is clear that the agency complies with [former subdivision 2, now subdivision 2(a)] so long as the agency can document that it made a decision to deny the application and sent a decision by the deadline," but did not say this was the exclusive way to comply. 694 N.W.2d at 826. Further, Hagen's reliance on *Minnesota Towers, Inc. v. City of Duluth,* No. Civ. 04–5068, 2005 WL 1593044, at *5 (D.Minn. July 1, 2005), is misplaced, both because that case involved a situation where the city did not

Although the interpretations given by other courts to automatic approval penalty statutes are not precedential, we note that our reading of section 15.99 is consistent with the courts of those states that have similar statutes. *See, e.g., Hinsdale v. Vill. of Essex Junction,* 153 Vt. 618, 572 A.2d 925, 928 (1990) (holding that the notice requirement was directory and did not trigger automatic approval even though that requirement and the requirement to render a timely decision were in the same statute); *Limekiln Golf Course, Inc. v. Zoning Bd. of Adjustment of Horsham Twp.,* 1 Pa.Cmwlth. 499, 275 A.2d 896, 904 (1971) (holding that automatic approval was not appropriate even though the board failed to timely mail the decision to deny, because the notice requirement was directory not mandatory).

Our discussion thus far has been based on our conclusion that the statute is not ambiguous. But even if we were to conclude that the juxtaposition of subdivision 2(a), with an automatic approval penalty, and subdivision 2(c), with no explicit penalty, created some ambiguity, we would reach the same result.

■ We have said that the purpose of subdivision 2 was to establish "deadlines for local governments to take action on zoning applications." *Am. Tower, L.P.,* 636 N.W.2d at 312. That purpose is fully accomplished by construing the requirement of subdivision 2(a) that the agency take action on the application to be mandatory and subject to the penalty, but the requirement of subdivision 2(c) that the agency give written notice to the applicant to be directory and not subject to the

penalty. *See* Minn.Stat. § 645.16 (2006) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.").

■ Several rules of statutory construction also favor the City's argument because they suggest that subdivision 2(a) should be construed narrowly against the application of the automatic approval penalty. One such rule of construction is the general notion that statutes that are penal in nature are construed narrowly against the penalty. *See Brekke v. THM Biomedical, Inc.,* 683 N.W.2d 771, 774 (Minn.2004) (citing *Chatfield v. Henderson,* 252 Minn. 404, 410, 90 N.W.2d 227, 232 (1958)). Another rule of construction is the presumption that "the legislature intends to favor the public interest as against any private interest." Minn.Stat. § 645.17(5) (2006). Here, the public interest is reflected in the City's present zoning and Comprehensive Plan and they outweigh the private interests of Hagen to have its application automatically approved without any consideration of the public interest.

This presumption favoring the public interest, when joined with the further presumption that the legislature does not intend a result that is unreasonable, Minn. Stat. 645.17(1) (2006), supports a narrow construction of the automatic approval penalty because that penalty conflicts with the affirmative responsibilities that are placed on the City when dealing with a request to change zoning. Under Minn. Stat. § 462.357, subds. 2, 3, and 5 (2006), a city is only to amend a zoning ordinance after notice has been given, a public hear-

---

reduce the reasons for denial to writing until after the response deadline, and because the district court's decision has been reversed by the Eighth Circuit Court of Appeals. *See Minnesota Towers, Inc. v. City of Duluth,* 474 F.3d 1052, 1055–56 (8th Cir.2007) (discussing the relationship between subdivisions 2(b)

and (c) of Minn.Stat. § 15.99 and holding that subdivision 2(c) does not require that a written statement be adopted within the 60–day period where the situation is one that is specifically addressed in subdivision 2(b)—the denial results from the failure of a vote on a motion to *approve* the zoning request).

ing held, and either consents have been obtained by a requisite number of affected residents or the approval is supported by the planning board and adopted by a majority of the city council.[4]

For the above reasons, we hold that a city's failure to timely provide an applicant with a written statement of the reasons for denying an application regarding zoning, as required by section 15.99, subdivision 2(c), does not trigger the automatic approval penalty of subdivision 2(a), which only applies to the failure to timely deny the application.[5]

Reversed.

Concurring, GILDEA, J.

GILDEA, Justice (concurring).

I concur with the majority's conclusion to reverse the court of appeals. I write separately to express my view that we should not invoke principles of statutory construction to resolve this case.

The majority holds that the provisions of Minn.Stat. § 15.99 that are at issue—subdivisions 2(a) and 2(c)—are not ambiguous. I agree. When we conclude that a statute is not ambiguous, as we have done here, "statutory construction is neither necessary *nor permitted.*" *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn. 2001) (emphasis added). Our only task is to apply the clear language of these provisions to the facts of this case. This appli-

cation, as the majority demonstrates, requires reversal. Nothing more need be said.

---

4. We have also said that a city's zoning decisions cannot be arbitrary, capricious, or unreasonable. *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 414–15 (Minn.1981) (" 'As a legislative act, a zoning or rezoning classification must be upheld unless opponents prove that the classification is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare.' " (quoting *State by Rochester Ass'n of Neighborhoods v. City of Rochester,* 268 N.W.2d 885, 888 (Minn.1978))); *Amcon Corp. v. City of Eagan,* 348 N.W.2d 66, 75 (Minn.1984) (stat-

ing that the failure of a city to advance any rationale for not following its comprehensive plan is strong evidence of arbitrary action). The automatic approval penalty would result in an approval without any reasons and without the support of the planning board or a majority of the council.

5. Because we reverse, we need not reach the City's second argument that a prejudice standard should be incorporated into the automatic approval penalty of subdivision 2(a).